533 P.2d 660
**Howard H. POLK and Ardella Polk, husband and wife, Appellants,**

v.

**Ralph L. KOERNER and Bonnie J. Koerner, husband and wife, Appellees.**

**No. 11707.**

Supreme Court of Arizona, In Division.

April 3, 1975.

**494**

Leibsohn, Eaton, Gooding & Romley, P. C. by William H. Gooding and Jeffrey M. Proper, Phoenix, for appellants.

Evans & Kunz, Ltd. by Jack E. Evans, Phoenix, for appellees.

HAYS, Justice.

In May, 1966, Howard Polk and Ralph Koerner entered into an agreement whereby Koerner would pay all of the expenses of Polk's dental practice except laboratory fees, and provide Polk with supplies, dental equipment, and office personnel. In consideration, Polk agreed to pay to Koerner a percentage of all amounts collected by Polk for dental services performed by him while in Koerner's office. A written agreement to this effect was signed by the parties on December 30, 1968. On July 14, 1971, Polk and Koerner entered into a second agreement whereby the previous one was "cancelled and annulled" although the parties continued to operate as they had before the written agreement. In November of that year, Polk left Koerner's office. At that time, Polk had performed approximately $27,000 worth of work from Koerner's office for which he had not yet been paid by the patients. Polk retained responsibility for billing his patients.

Telescoping the sequence of events, Koerner first asked Polk for Koerner's percentage of the accounts as they were paid to Polk and then, after Polk refused, asked Polk's patients to remit that percentage to Koerner and the remainder to Polk. Polk instituted this action against Koerner for declaratory judgment, accounting, interference with business relations, and defamation of character. The issue of declaratory judgment was tried first by stipulation of the parties. The trial court entered a judgment for the defendant, Koerner. The plaintiff appealed and this court has taken jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court.

On appeal, the evidence will be viewed in the strongest light in favor of the appellee, and if there is any reasonable evidence to support the judgment of the trial court, it will be sustained. Kellogg v. Bowen, 85 Ariz. 304, 337 P.2d 628 (1959). Where findings of fact have been made, they will be considered binding unless clearly contrary to the evidence. Aztec Film Productions v. Tucson Gas & Electric Co., 11 Ariz.App. 241, 463 P.2d 547 (1969). Any inconsistency in the findings of fact will be construed to support the judgment. Austin Paving Co. v. Cimarron Construction Co., 511 S.W.2d 417

(Tex.Civ.App.1974). This court is not, of course, bound by the trial court's conclusions of law; the interpretation of an instrument is a question of law to be determined by this court independently. State Farm Fire & Casualty Co. v. Rossini, 107 Ariz. 561, 490 P.2d 567 (1971). However, having accepted the trial court's findings of fact as we have done in this case, we will accept the conclusions of law that necessarily follow. Sam Levitz Furniture Co. v. Safeway Stores, Inc., 105 Ariz. 329, 464 P.2d 612 (1970).

The trial court concluded as a matter of law that the agreement of December 30, 1968, was ambiguous and susceptible of two interpretations: (a) that plaintiff was to pay to defendant a portion of the accounts receivable collected only during the period of time the plaintiff and defendant shared offices, or (b) that plaintiff was to pay the defendant a percentage of the accounts collected as they were collected, including collections made after plaintiff left the defendant's office for work done by plaintiff during the time he shared defendant's office.

It is a fundamental rule in the interpretation of contracts that the court must ascertain and give effect to the intention of the parties at the time the contract was made if at all possible. Employer's Liability Assurance Co. v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957). Where the written language of the agreement offers more than one reasonable interpretation, the surrounding circumstances at the time that it was made should be considered in ascertaining its meaning. Crone v. Amado, 69 Ariz. 389, 214 P.2d 518 (1950); 4 Williston on Contracts, § 618 (3d ed.).

The trial court found that the second interpretation was in accord with the intention of the parties. We concur with that position. The second interpretation comports with the arrangement between the two men before it was formally incorporated into a written agreement.

The rule of construction that an ambiguity of language is resolved against the maker of the contract, the defendant in this instance, is a secondary rule of construction to be applied only if the meaning remains uncertain after the application of the primary standards utilized above. Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz.App. 52, 429 P.2d 686 (1967); Restatement of the Law of Contracts, § 236(d). We do not find it necessary in this case to resort to a secondary rule of construction.

Furthermore, we find the second interpretation to be one which gives the more "reasonable, lawful and effective meaning to all manifestations of intention" and it is therefore preferred. Employer's Liability Assurance Co. v. Lunt, *supra*; Restatement of the Law of Contracts, § 236(a). Although the accounts for work done by Polk while utilizing Koerner's facilities had not yet been paid, they were due at the time that Polk left Koerner's office.

The cancellation agreement rescinded the agreement of December 30, 1968, and returned the parties to their prior arrangement until the time that Polk actually left Koerner's office.

" 'To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject to the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. . . .' Black on Rescission and Cancellation, 2d ed., vol. 1, sec. 1, p. 1." Reed v. McLaws, 56 Ariz. 556, 562–63, 110 P.2d 222, 225 (1941).

The arrangement incorporated by the contract was, in fact, the prior arrangement. While the contract became a nullity after the cancellation agreement, in reality, the situation remained fundamentally unchanged. By continuing their association after the cancellation agreement, the parties impliedly agreed to operate on the same financial basis as before the first agreement was executed.

We therefore affirm the judgment of the trial court holding that Polk is obligated to pay to Koerner 45% of all amounts collected of the accounts arising from work performed by Polk while in the defendant's office in accordance with the procedures set forth by the trial judge in his order of January 2, 1973.

Affirmed.

CAMERON, C. J., and HOLOHAN, J., concur.