[Civil No. 4304. Filed March 10, 1941.]

[111 Pac. (2d) 68.]

S. I. ALLRED, Administrator of the Estate of Arthusa Hoopes McClelland, Deceased, Appellant, v. JOSEPH ALLRED, ELOISE ALLRED HOUSEHOLDER and VERNON HOUSEHOLDER, Her Husband, and DELBERT ALLRED, ELAINE ALLRED, ROXIE ALLRED, LA VAR ALLRED, JOSEPHINE ALLRED, PEARL ALLRED, GERRY RAY ALLRED, and J. N. ALLRED, Appellees.

Mr. J. Verne Pace and Mr. Guy Anderson, for Appellant.

Mr. Benjamin Blake and Mr. Max T. Layton, for Appellees.

LOCKWOOD, C. J.—Arthusa Hoopes McClelland, hereinafter called deceased, was the owner of certain real estate in the Gila valley. Being of sound mind but in poor physical health, and anticipating death within a comparatively short time, she executed two deeds thereto in favor of Joseph W. Allred and Maybell Allred. One was a straight warranty deed, while the other was similar in form except that it contained the following clause:

"Reserving however a life estate to the above described property to myself and my son John Hoopes."

After executing these instruments she delivered them to one Vernon Householder, with instructions that after her death he should deliver them to Joseph Allred. On August 24, 1935, deceased passed away without ever having made any attempt or expressed any desire to recall the deeds from Householder's possession. Immediately thereafter the latter delivered them to Joseph Allred. It is agreed between the parties that it was the intention of deceased at the time she executed them to convey the property in question to the grantees with the reservation of a life estate in herself and Jonathan Hoopes aforesaid, to insure

his support and maintenance during the balance of his life, and that subsequent to the death of the grantor therein, the grantees did take Hoopes into their home and cared for him until his death.

This action was brought by S. I. Allred, as administrator of the estate of deceased, for the purpose of having the deeds in question declared to be void and of no effect. The trial court, on ample evidence, found the facts to be as stated above, and rendered judgment affirming the validity of the deeds, whereupon this appeal was taken.

There is but one question involved, and that is whether the foregoing facts show a valid delivery of the deeds so as to pass title *in praesenti* or whether they are to be construed as a testamentary disposition of the property covered thereby, in which case they are void as not being in compliance with our statute of wills.

We think there are two Arizona cases which determine the question, the first being that of *Hutton* v. *Cramer*, 10 Ariz. 110, 85 Pac. 483, 484, 103 Pac. 497. In that case one E was the owner of certain real estate, and being of advanced years and somewhat feeble he proposed to one C, if the latter would agree to take care of him during his lifetime, to so arrange his affairs that C should have the property upon his death. E thereupon executed a deed and deposited it in the safe deposit box of C, the box being then placed in the name of both C and E, with each having separate access thereto. After the death of E, C placed the deed of record. On this state of facts the court said:

"It is evident from the facts above stated that Epley intended, by depositing the deed in Cramer's bank box, to part with its possession, and it is likewise evident from his declarations and subsequent conduct that he had no intention of reserving the

power of recalling the deed. It is true that the circumstances show that he could have regained possession of the deed had he so chosen. The arrangement made with the cashier of the bank granting Epley permission to have access at any time to the box and the papers therein was made by Cramer, and was not made through any suggestion or request coming from Epley. Nothing in his acts or in his written notice accompanying the deed negatives the view taken by the trial court in its findings that Epley intended irrevocably to place the deed in the bank box to be there kept until his death. Such an act with such an intent constitutes in law a delivery and a transfer of title under the deed. It is a generally accepted rule of law that where a deed to real estate is handed to a third party to be kept until the death of the grantor, and then immediately to be delivered to the grantee, upon the death of the grantor title vests in the grantee as of the time when the deed was thus placed in escrow; and the law regards the legal effect of such a conditional delivery to be the same, after the death of the grantor, as if there had been an absolute delivery of the deed during the life of the grantor, and an immediate transfer of the title to the grantee, with a reservation of a life estate by the grantor. . . . ''

In the case of *Scoville* v. *Vail Investment Co.*, 55 Ariz. 486, 103 Pac. (2d) 662, 666, while the property involved was stock in a corporation instead of realty, the order to the corporation directing the transfer of the stock to the grantees after the death of the donor was placed in the hands of a third party for delivery after such death, and we held as follows:

''To constitute a gift *inter vivos*, it is essential that there be a donative intent, that the gift be executed by delivery and that it vests an irrevocable title upon such delivery. It is not necessary, however, that the enjoyment of the thing given take effect immediately. That may be postponed until some future event certain, such as the death of the donor. Does the record disclose a valid gift *inter vivos* between deceased and the four children named in the order above set forth? A donative intent is apparent, and there was an un-

conditional delivery to a third party in escrow. Was the delivery irrevocable? Certainly there is nothing upon the face of the order which indicates in the slightest manner that deceased reserved to herself the right to revoke it or recall the delivery. It is complete and unconditional in its terms as an order to the company, which was the trustee of the unissued stock for the purposes set forth in the agreement between it and Mrs. Vail, to issue the stock to named parties upon the happening of an event certain. We think the only reasonable conclusion to be drawn from the face of the order and the undoubted fact of delivery was that it was irrevocable and, therefore, a valid gift *inter vivos*. But, assuming for the sake of the argument, that it was ambiguous on its face as to whether it was irrevocable, the law is that in such cases parol evidence is admissible to show the intent of the donor.''

██ We think the essential facts in the present case, and in the two cited, are alike. The unconditional delivery of a gift or grant of property to a third party, to take effect at the death of the giver, if there is no intention of revoking the same, or actual revocation thereof, is effective and valid as of the time of the delivery, although the enjoyment thereof may be postponed until a later date.

The judgment of the trial court is affirmed.

McALISTER and ROSS, JJ., concur.